**Dale SELBY aka Dale S. Pierre, Petitioner,**

v.

**Kenneth V. SHULSEN, Warden of the Utah State Prison, and David L. Wilkinsen, Attorney General of the State of Utah, Respondents.**

**Civ. No. C–78–0461W.**

United States District Court, D. Utah, C.D.

Dec. 13, 1984.

D. Gilbert Athay, Salt Lake City, Utah, for petitioner.

Earl F. Dorius, David J. Schwendiman, Asst. Attys. Gen., Salt Lake City, Utah, for respondents.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This action comes before the court on a petition for a writ of habeas corpus filed by Dale Selby, aka Dale S. Pierre ("Selby"), pursuant to 28 U.S.C. § 2254. The court heard oral arguments on the issues presented by the petition on August 10, 1984, D. Gilbert Athay appearing for petitioner and Earl F. Dorius and David J. Schwendiman appearing for respondents. After carefully considering the oral arguments, memoranda, pertinent authorities and the entire record in this matter, the court renders the following decision and order.

Petitioner and William Andrews were convicted of three counts of first degree murder and two counts of aggravated robbery for the killings of three people in the course of a robbery at the Hi Fi Shop in Ogden, Utah. After a sentencing proceeding, the Second District Court of the State of Utah sentenced petitioner and Andrews to death. The facts and background of this case are set forth in a memorandum decision in the companion case of *Andrews v. Shulsen*, 600 F.Supp. 408 (D. Utah), filed concurrently with this decision.

Petitioner filed an Amended Petition on December 4, 1980, nearly identical to the petition filed in Civ. No. C–78–0462W by Andrews, and has joined in a Second Amended Petition filed by Andrews. The authorities and reasoning pertinent to the claims raised in Andrews' Second Amended Petition are fully discussed in the opinion referred to above, are controlling here and are incorporated herein by reference. The court will address in this opinion only the two additional claims raised by petitioner: (1) that Utah's capital sentencing scheme is mandatory in nature in violation of the Eighth Amendment; and (2) that the use of certain psychiatric testimony at the penalty phase of the trial violated petitioner's Fifth and Sixth Amendment rights.

### 1. *Mandatory Sentencing*

■ Petitioner claims that the structure of the Utah capital sentencing scheme impermissibly shifts the burden of proof to the defendant at the penalty phase making the death sentence mandatory in certain circumstances.[1] As fully discussed in *An-*

---

1. Respondents contend that this claim is barred under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The opinions of the Utah Supreme Court clearly indicate, how-ever, that the standard of proof issue was raised and rejected on direct appeal and in the state habeas corpus proceeding. *See Pierre v. Morris*, 607 P.2d 812, 814–15 (Utah 1980).

*drews, supra,* the Utah system bifurcates the guilt and penalty phases of a capital trial. At the guilt phase, the prosecution must prove at least one statutory aggravating circumstance beyond a reasonable doubt as an element of first degree murder before a defendant is eligible for the death penalty. At the penalty phase, the sentencing authority must find that the aggravating circumstances outweigh any mitigating circumstances for the death sentence to be imposed. Petitioner argues that such a procedure placed an impossible burden on him to produce evidence in the penalty phase to rebut evidence found beyond a reasonable doubt in the guilt phase. This court concluded in *Andrews* that the structure and application of the Utah statute comports with the Constitution. The claim raised by Selby does not persuade the court to reach a different conclusion.

The Utah statute is not the type of mandatory sentencing law struck down in *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Under the Louisiana law in *Roberts* all persons found guilty of first-degree murder, aggravated rape, aggravated kidnapping, or treason were automatically sentenced to death. *See id.,* 428 U.S. at 331, 96 S.Ct. at 3005. The inherent problem with such a scheme is that it fails to "focus on the circumstances of the particular offense and the character and propensities of the offender." *Id.* at 333, 96 S.Ct. at 3006. The Utah system, by contrast, allows the sentencing authority to impose the death penalty after a bifurcated proceeding only if the aggravating circumstances outweigh mitigating circumstances and the death penalty is appropriate for the defendant and his crime. *See State v. Pierre,* 572 P.2d 1338, 1347–48 (Utah 1977), *reh'g denied,* 576 P.2d 857 (Utah), *cert. denied,* 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978). Even if a defendant presents no evidence of mitigating circumstances, the sentencer must find at the penalty phase that the aggravating circumstances found at the guilt phase make the death penalty appropriate.

The fact that a reasonable doubt standard was not required at the penalty phase does not aid petitioner's argument. As noted in *Andrews, supra,* the process of weighing aggravating and mitigating circumstances is not susceptible to proof. Indeed, "'[s]entencing decisions rest on a far-reaching inquiry into countless facts and circumstances not on the type of proof of particular elements that returning a conviction does.'" *California v. Ramos,* 463 U.S. 992, —— n. 21, 103 S.Ct. 3446, 3456 n. 21, 77 L.Ed.2d 1171, 1185 n. 21 (1983) (quoting *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring)). The Utah procedure provides the individualized determination of the appropriateness of the death penalty required by the Constitution. Petitioner was allowed to present any evidence of mitigating factors and in fact did so. Petitioner's claim must therefore be rejected.

## 2. *Psychiatric Testimony*

Petitioner claims that the use of certain psychiatric testimony at the penalty phase of his trial violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel.[2] At the penalty phase, Dr. Louis G. Moench, a psychiatrist who had been appointed by the court at the request of petitioner's counsel to perform a pre-trial competency examination of petitioner, testified on the state's behalf that: (1) petitioner was able to distinguish right from wrong both legally and morally; (2) there was no evidence of mental defect or illness that would interfere with petitioner's ability to distinguish between right and wrong; (3) there was no

---

**2.** Respondents also argue that this claim has been waived or is barred under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A review of the record indicates that this claim was not raised on direct appeal or in the state habeas petition. This court makes no finding of deliberate bypass, but exercises the discretion permitted by *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963), to treat the issue on its merits. *See Holcomb v. Murphy,* 701 F.2d 1307, 1312 (10th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3546, 77 L.Ed.2d 1394 (1983).

significant change in petitioner's mental condition between the time of the crime and the examination; and (4) the defendant was within the average range of intelligence and was able to assist in his own defense. *See* R. T–23, at 4134–37.

Petitioner relies on *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), in support of his Fifth Amendment argument. In *Smith,* the Supreme Court held that the Fifth Amendment privilege against self-incrimination protected compelled disclosures during a court-ordered psychiatric examination. The trial judge in *Smith* informally ordered the state's attorney to arrange a pre-trial competency examination of the defendant. The psychiatrist was not called to testify at the guilt phase of the capital proceeding, but testified extensively at the penalty phase on the defendant's future dangerousness. Under the Texas procedure applicable in *Smith,* the prosecution was required to prove future dangerousness at the penalty phase before the death penalty could be imposed. The Supreme Court found that the defendant's Fifth Amendment right against self-incrimination was violated under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the defendant was neither appraised of his right to remain silent nor did he knowingly waive that right.

This case is clearly distinguishable from *Smith* in that the testimony of Dr. Moench was strictly limited to Selby's competency. The Fifth Amendment privilege is involved only where the results of a court-ordered competency examination are used "to determine a defendant's culpability or responsibility for the crimes charged against him." *Battie v. Estelle,* 655 F.2d 692, 701 (5th Cir.1981). Indeed, in *Smith,* the Supreme Court observed:

> The fact that respondent's statements were uttered in the context of a psychiatric examination does not automatically remove them from the reach of the Fifth Amendment .... The state trial judge, *sua sponte,* ordered a psychiatric evaluation of respondent for the limited, neutral purpose of determining his competency to stand trial, but the results of that inquiry were used by the state for a much broader objective that was plainly adverse to respondent. Consequently, the interview with Dr. Grigson cannot be characterized as a routine competency examination restricted to ensuring that respondent understood the charges against him and was capable of assisting in his defense. *Indeed, if the application of Dr. Grigson's findings had been confined to serving that function, no Fifth Amendment issue would have arisen.*

*Smith,* 451 U.S. at 465, 101 S.Ct. at 1874 (emphasis added). The results of the examination of Selby were not used to determine culpability or responsibility for the crimes and were not used to prove a factor necessary for the imposition of the death penalty. Instead, the brief testimony of Dr. Moench merely provided the jury with evidence concerning Selby's mental condition, a factor that is certainly relevant in the individualized determination required by the Eighth Amendment. *See, e.g., California v. Ramos,* 463 U.S. 992, ——, 103 S.Ct. 3446, 3456, 77 L.Ed.2d 1171, 1184 (1983); *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976). Further, Dr. Moench's testimony was strictly limited to Selby's competency. Dr. Moench did not testify concerning inculpatory statements or any other statements made during the examination and did not refer to future dangerousness. By contrast, the psychiatrist in *Smith* testified extensively concerning inculpatory statements made during the examination that indicated the defendant would be dangerous in the future—an essential element that must be proven before the death penalty can be imposed under Texas law.

The examination here was conducted at the request of defense counsel and was voluntary. The testimony of Dr. Moench was strictly limited to the scope of the purpose for which the psychiatric examination was requested. In this context, the court concludes that the limited application

of the results of the examination does not implicate the Fifth Amendment.

Petitioner also contends that the state's use of the psychiatric examination involved an improper use of work product effectively denying petitioner his Sixth Amendment right to effective counsel.[3] Petitioner has not cited, nor is the court aware of any cases that have accepted such an extension of the Sixth Amendment. Moreover, the psychiatric testimony elicited at petitioner's sentencing hearing is simply not work product. Petitioner's counsel did not prepare the psychiatrist's report and the psychiatrist did not reveal any communication given him by defense counsel or petitioner. Rather, Dr. Moench testified as an independent court-appointed expert, never disclosing any mental impressions, conclusions or legal theories that defense counsel had used in preparing the case. *See United States v. Nobles*, 422 U.S. 225, 236–38, 95 S.Ct. 2160, 2169–70, 45 L.Ed.2d 141 (1975). Petitioner's Sixth Amendment argument is therefore without merit.

For the reasons set forth herein, IT IS HEREBY ORDERED that:

1. The petition for a writ of habeas corpus is denied;

2. The preliminary order of this court entered on June 15, 1981 is vacated to the extent that it is inconsistent with this opinion;

3. The stay of execution entered by this court on December 5, 1980 is dissolved; and

4. The clerk shall enter judgment dismissing this action.

---

**3.** The court notes that petitioner's counsel objected to the psychiatrist's testimony at trial only on the work product theory. Counsel further stated specifically that the objection was not based on privilege, R. T–23, at 4132, and there is no claim based on attorney-client or physician-patient privilege in the petition before this court.