POWELL *v.* TEXAS

No. 88–6801.   Decided July 3, 1989

PER CURIAM.

This case—and, indeed, this precise question—is now before the Court for the second time.   Last Term, petitioner sought review of the decision of the Texas Court of Criminal Appeals affirming his sentence of death, asserting that evidence was received during the penalty phase of his trial in contravention of his Fifth and Sixth Amendment rights. After issuing our decision in *Satterwhite* v. *Texas*, 486 U. S.

249 (1988), we granted the petition for a writ of certiorari, vacated the Texas court's judgment, and remanded for further consideration in light of *Satterwhite*. 487 U. S. 1230 (1988). On remand, the Texas court reinstated its prior decision. Because that decision is inconsistent with our decisions in *Satterwhite* and *Estelle* v. *Smith*, 451 U. S. 454 (1981), we now grant the motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari and reverse the judgment of the Court of Criminal Appeals.

In *Estelle* v. *Smith* we held that a capital defendant's Fifth Amendment right against compelled self-incrimination precludes the state from subjecting him to a psychiatric examination concerning future dangerousness without first informing the defendant that he has a right to remain silent and that anything he says can be used against him at a sentencing proceeding. *Id.*, at 461–469. We also held—and in this respect the Court's judgment was unanimous—that, once a capital defendant is formally charged, the Sixth Amendment right to counsel precludes such an examination without first notifying counsel that "the psychiatric examination [will] encompass the issue of their client's future dangerousness." *Id.*, at 471. See also *id.*, at 474 (Stewart, J., concurring in judgment); *ibid.* (REHNQUIST, J., concurring in judgment). Last Term's decision in *Satterwhite* reaffirmed this Sixth Amendment protection, emphasizing that "for a defendant charged with a capital crime, the decision whether to submit to a psychiatric examination designed to determine his future dangerousness is 'literally a life or death matter' which the defendant should not be required to face without 'the guiding hand of counsel.'" 486 U. S., at 254 (citations omitted).

In this case there is no dispute that on the day of petitioner's arrest the trial court, at the State's request, ordered that a psychiatric examination be conducted by Dr. Richard Coons and a psychologist of Dr. Coons' choice to determine petitioner's competency to stand trial and sanity at the time of the offense. Dr. Coons examined petitioner on four occasions,

and Dr. George Parker, a clinical psychologist, tested petitioner on two additional occasions. It is also undisputed that neither petitioner nor his attorney was notified that he would be examined on the issue of future dangerousness and that petitioner was not informed of his right to remain silent. Finally, it is uncontested that, over petitioner's objection, Drs. Coons and Parker testified at petitioner's sentencing hearing that based on these examinations they were of the view that petitioner "would commit future acts of violence that would constitute a continuing threat to society." 742 S. W. 2d 353, 356 (Tex. Crim. App. 1987) (en banc). The jury was persuaded of this fact, and petitioner was sentenced to death.[1]

Despite the close similarity between the facts of this case and those at issue in *Smith*, the Texas Court of Criminal Appeals in its original decision declined to vacate petitioner's sentence. 742 S. W. 2d, at 360. That decision was premised on alternative holdings: petitioner's Fifth and Sixth Amendment rights were not violated, *id.*, at 357–359, and, even if they were, any error was harmless, *id.*, at 359–360. After we granted the initial petition for a writ of certiorari, vacated the Court of Criminal Appeals' judgment, and remanded for further consideration in light of *Satterwhite*, the court reinstated its earlier decision holding that petitioner's Fifth and Sixth Amendment rights were not violated. 767 S. W. 2d 759 (1989) (en banc). The court simply withdrew that portion of its original opinion that relied on harmless-error analysis, observing that the analysis it applied was "denounced" in *Satterwhite* and was, in any event, "superfluous to the disposition and constituted nothing more than obiter dictum." 767 S. W. 2d, at 762. But, it made clear that its "initial determination of no *Smith* error, as well as the re-

---

[1] Under Texas law, a capital defendant may not be sentenced to death unless the State proves beyond a reasonable doubt that "there is a probability that the defendant [will] commit criminal acts of violence that [will] constitute a continuing threat to society." Tex. Code Crim. Proc. Ann., Art. 37.071(b)(2) (Vernon Supp. 1989).

maining holdings of [the] original opinion, . . . remain[ed] undisturbed." *Ibid.* In dissent, Judge Clinton wrote that to consider "that *Satterwhite* 'solely concerned harmless error,' . . . is to disregard much in Part II of that opinion finding a violation of the Sixth Amendment right to assistance of counsel." *Id.*, at 763. He also observed that "it is most unlikely that the Supreme Court would remand this cause for us to reconsider a superfluous harmless error analysis, albeit it was utterly flawed[,] [u]nless the Supreme Court believed 'there was error in admitting the testimony of Drs. Coon[s] and Parker.'" *Id.*, at 764 (citation omitted).

The Court of Criminal Appeals' holding that petitioner's Fifth and Sixth Amendment rights were not violated was based on its conclusion that petitioner waived those rights by introducing psychiatric testimony in support of a defense of insanity. 742 S. W. 2d, at 357–358. The court held that petitioner not only waived the right to object to the State's use of the Coons and Parker testimony to rebut his defense, but that he also waived the right to object to the State's use of this testimony to satisfy its burden at sentencing of proving the separate issue of future dangerousness. *Id.*, at 358–359. Because the Court of Criminal Appeals conflated the Fifth and Sixth Amendment analyses, and provided no support for its conclusion that petitioner waived his Sixth Amendment right, its judgment must be reversed.[2]

The principal support found in the Court of Criminal Appeals' decision for the proposition that petitioner waived the right to object to the State's use of the Coons and Parker testimony is the Fifth Circuit's opinion in *Battie* v. *Estelle*, 655 F. 2d 692 (1981). In that case, the Court of Appeals suggested that if a defendant introduces psychiatric testimony to establish a mental-status defense, the government may be justified in also using such testimony to rebut the defense

---

[2] We therefore have no occasion to address whether a waiver of the right to object to the use of psychiatric testimony at the guilt phase of a capital trial extends to the sentencing phase as well.

notwithstanding the defendant's assertion that the psychiatric examination was conducted in violation of his right against self-incrimination. *Id.*, at 700–702. In such circumstances, the defendant's use of psychiatric testimony might constitute a waiver of the Fifth Amendment privilege, just as the privilege would be waived if the defendant himself took the stand. *Id.*, at 701–702, and n. 22. The Court of Appeals explained that "any burden imposed on the defense by this result is justified by the State's overwhelming difficulty in responding to the defense psychiatric testimony without its own psychiatric examination of the accused and by the need to prevent fraudulent mental defenses." *Id.*, at 702 (footnote omitted).

Language contained in *Smith* and in our later decision in *Buchanan* v. *Kentucky*, 483 U. S. 402 (1987), provides some support for the Fifth Circuit's discussion of waiver. In *Smith* we observed that "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he has interjected into the case." 451 U. S., at 465. And in *Buchanan* the Court held that if a defendant requests a psychiatric examination in order to prove a mental-status defense, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense. 483 U. S., at 422–423.

Significantly, the Court of Appeals made clear in *Battie* that it was dealing exclusively with the Fifth Amendment privilege and was not passing upon the defendant's separate Sixth Amendment challenge. 655 F. 2d, at 694, n. 2. Likewise, the waiver discussions contained in *Smith* and *Buchanan* deal solely with the Fifth Amendment right against self-incrimination. Indeed, both decisions separately discuss the Fifth and Sixth Amendment issues so as not to confuse the distinct analyses that apply. No mention of waiver is contained in the portion of either opinion discussing the Sixth

Amendment right. This is for good reason. While it may be unfair to the state to permit a defendant to use psychiatric testimony without allowing the state a means to rebut that testimony, it certainly is not unfair to require the state to provide counsel with notice before examining the defendant concerning future dangerousness. Thus, if a defendant were to surprise the prosecution on the eve of trial by raising an insanity defense to be supported by psychiatric testimony, the court might be justified in ordering a continuance and directing that the defendant submit to examination by a state-appointed psychiatrist. There would be no justification, however, for also directing that defense counsel receive no notice of this examination.

The distinction between the appropriate Fifth and Sixth Amendment analyses was recognized in the *Buchanan* decision. In that case, the Court held that the defendant waived his Fifth Amendment privilege by raising a mental-status defense. 483 U. S., at 421–424. This conclusion, however, did not suffice to resolve the defendant's separate Sixth Amendment claim. Thus, in a separate section of the opinion the Court went on to address the Sixth Amendment issue, concluding that on the facts of that case counsel knew what the scope of the examination would be before it took place. *Id.*, at 424–425. Indeed, defense counsel himself requested the psychiatric examination at issue in *Buchanan*. *Id.*, at 424. In contrast, in this case counsel did not know that the Coons and Parker examinations would involve the issue of future dangerousness.[3]

---

[3] Unlike in *Buchanan*, our decision in *Smith* did not place petitioner's attorney on notice concerning the scope or intended use of the psychiatric examinations. Most significantly, although the Texas Court of Criminal Appeals only recently rendered a decision on his direct appeal, petitioner was tried and convicted before *Smith* was decided. Moreover, even if counsel had anticipated the *Smith* decision, he would only have been on notice that by raising a mental-status defense he might open the door to "use of psychological evidence by the prosecution in rebuttal." *Buchanan*, 483 U. S., at 425 (footnote omitted). Nothing in *Smith*, or any other decision

In deciding that petitioner waived his right to object to the Coons and Parker testimony, the Court of Criminal Appeals in its initial opinion concentrated almost exclusively on petitioner's Fifth Amendment claim to the exclusion of his separate contention that counsel should have been informed that he was to be examined on the issue of future dangerousness. Moreover, even after we remanded for further consideration in light of *Satterwhite*, a case that was premised exclusively on the Sixth Amendment, the court failed to give any further attention to the Sixth Amendment claim. Because the evidence of future dangerousness was taken in deprivation of petitioner's right to the assistance of counsel, and because there is no basis for concluding that petitioner waived his Sixth Amendment right, we now hold that *Smith* and *Satterwhite* control and, accordingly, reverse the judgment of the Court of Criminal Appeals.

*It is so ordered.*

---

of this Court, suggests that a defendant opens the door to the admission of psychiatric evidence on future dangerousness by raising an insanity defense at the guilt stage of trial.