MALONEY, Judge,
dissenting.
The majority holds Dr. Griffith’s warnings to applicant were sufficient to comply with Estelle v. Smith. Majority at 192. Because I disagree with the majority’s holding, I respectfully dissent.
In Estelle v. Smith, the Supreme Court held that admission of the psychiatrist’s testimony at the penalty phase violated the defendant’s Fifth Amendment rights because the defendant was not advised prior to the pretrial psychiatric examination that any statement he made could be used against him at the penalty phase. Estelle v. Smith, 451 U.S. 454, 468, 101 S.Ct. 1866, 1875-76, 68 L.Ed.2d 359 (1981). The majority holds that a warning is in compliance with Estelle v. Smith if it informs a defendant that his statements could be used against him in the courtroom. In essence, the majority concludes that a generic Miranda warning is sufficient. Because I believe Estelle v. Smith requires a specific warning that the defendant’s statements could be used against him at the sentencing proceeding, I dissent.
The language in Estelle v. Smith does not support the majority opinion. If the Supreme Court had meant to require nothing more than generic Miranda warnings, (something it has never said would suffice in Miranda required situations) it would have been precise in so stating. The Supreme Court phrased the specific issue before it as follows:
... whether the admission of Dr. Grigson’s testimony at the penalty phase violated respondent’s Fifth Amendment privilege against self-incrimination because respondent was not advised before the pretrial psychiatric examination that he had a right to remain silent and that any statement he made could be used aginst him at a sentencing proceeding.
Smith, 451 U.S. at 461, 101 S.Ct. at 1872. The fact that the examination was used in an effort to obtain a verdict of death was emphasized by the Court. In reaching its holding that the defendant’s Fifth Amendment rights were violated by the admission of the testimony, the Court observed:
... [respondent] was given no indication that the compulsory examination would be used to gather evidence necessary to decide whether, if convicted, he should be sentenced to death. He was not informed that, accordingly, he had a constitutional right not to answer the questions put to him.
Id. at 467,101 S.Ct. at 1875.
I have found no case which interprets Estelle v. Smith as the majority does. In Powell v. Texas, 492 U.S. 680, 681, 109 S.Ct. 3146, 3147-48, 106 L.Ed.2d 551 (1989), the Supreme Court stated:
In Estelle v. Smith, we held that a capital defendant’s Fifth Amendment right against compelled self-incrimination precludes the state from subjecting him to a psychiatric examination concerning future dangerousness without first informing the defendant that he has the right to remain silent and that anything he says can be used against him at the sentencing proceeding.
See, e.g., Vanderbilt v. Collins, 994 F.2d 189, 197 (5th Cir.1993), (noting Fifth Amendment violation in Estelle v. Smith arose because defendant was not informed statements made *197 during his psychiatric examination could be used during penalty phase); Muniz v. Procurer, 760 F.2d 588, 589 (5th Cir.1985) (holding, under Estelle v. Smith, defendant’s Fifth Amendment rights were violated because he did not receive his Miranda warnings “nor was he told that the responses to the doctor’s questions might be used against him on issues governing his punishment”); White v. Estelle, 720 F.2d 415, 417 (5th Cir.1983) (finding Fifth Amendment violation based on Estelle v. Smith where defendant “not advised of his right to remain silent nor forewarned that any disclosure made during the mental examinations would be used against him as evidence, if convicted, in a penalty hearing that might result in a capital sentence”); Battie v. Estelle, 655 F.2d 692, 697 (5th Cir.1981) (stating “[i]n Smith, the Supreme Court held that the State’s introduction into evidence of a ... psychiatrist’s testimony to prove a capital defendant’s future dangerousness, based on information obtained by a defendant in custody ... without a prior warning to the defendant that he has the right to remain silent and that any statement he made could be used against him at a sentencing proceeding,” violated Miranda).
The majority fails to distinguish caselaw from this Court. In Wilkens v. State, 847 S.W.2d 547, 553 (Tex.Crim.App.1992), cert. denied, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993), we held that psychiatric testimony as to a defendant’s future dangerousness by experts appointed by a trial court to examine the defendant on the issues of competency and sanity was not admissible at the punishment phase of a capital murder trial absent some waiver by the defendant of his Fifth Amendment privilege against self-incrimination at the punishment phase, notwithstanding appellant’s waiver of this privilege at the guilt/innocence phase. We noted that:
Three cases from the United States Supreme Court strongly suggest that admission of psychiatric testimony at the punishment phase, in particular concerning the issue of future dangerousness, requires a separate waiver or warning. Smith instructs that a defendant must be informed that what he says could be used against him at the punishment phase of a capital murder trial.

Id.

In Hernandez v. State, 805 S.W.2d 409, 411-12 (Tex.Crim.App.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), we discussed the warnings which must be given to comply with the mandate of Estelle v. Smith:
Before any such psychiatric interview, the defendant’s Fifth Amendment rights should be protected by warnings intended to serve as “procedural safeguards effective to secure the privilege against self-incrimination.” ... Such warning should inform the defendant that he has the right to remain silent and that his statements may later be used against him in court; if the defendant faces capital charges, this warning should specifically inform him that his statements could be used against him at the punishment stage of his capital murder trial, (citations omitted)(emphasis added)
As the above establishes, we have uniformly interpreted Estelle v. Smith as requiring more than a warning that a defendant’s statement may be used against him in court.
In Estelle v. Smith, the Supreme Court recognized that this type of claim implicates the voluntary nature of a defendant’s statement when it wrote
respondent’s statements to Dr. Grigson were not ‘given freely and voluntarily without any compelling influences’ and, as such, could be used as the State did at the penalty phase only if respondent had been appraised of his rights and had knowingly decided to waive them.
Smith, 451 U.S. at 469, 101 S.Ct. at 1876. Because applicant was not informed that his statements could be used against him at the punishment phase of his trial, it cannot be assumed that his statements were given freely and voluntarily. Applicant’s statements were “unwittingly made without an awareness that he was assisting the State’s efforts to obtain the dealth penalty.” Id. at 466,101 S.Ct. at 1875. I conclude that applicant did not waive his Fifth Amendment privilege as to the penalty phase of his trial, and there *198 fore, his Fifth Amendment privilege against self-incrimination was violated by Dr. Griffith’s testimony at that phase concerning applicant’s fixture dangerousness. Because the majority holds otherwise, I respectfully dissent.
BAIRD and OVERSTREET, JJ„ join.