COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

LOUIS DOUGLAS HALLEY, IV.,                       )

                                                                              )              No.  08-01-00088-CR

Appellants,                         )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )               
238th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of Midland County, Texas

Appellee.                           )

                                                                              )               
(TC# CR-25,708)

                                                                              )

 

O
P I N I O N

 

Appellant Louis
Douglas Halley, IV plead guilty and was convicted of
murder in the first degree.  He elected
to have punishment assessed by a jury. 
At the close of a three-day unitary proceeding, the jury sentenced Appellant
to life in prison.  On appeal, Appellant
raises five issues.  We affirm the
judgment of the trial court.








In the Fall of 1998, Appellant was employed by the Midland Hilton
Hotel as a bar supervisor.  As part of
his job responsibilities, Appellant supervised and worked with Krista Nagel and
Johnny Okrasinski. 
Appellant became friends with Ms. Nagel. 
The two spent time together outside the workplace and developed a social
relationship.

In January 1999,
Krista Nagel spent an evening alone with Johnny Okrasinski
at his apartment.  The two talked and
drank wine for a couple of hours. 
According to Ms. Nagel, Mr. Okrasinski asked
her to watch a pornographic video with him and also wanted her to remove her
blouse and pose for photographs.  At some
point in the evening, Ms. Nagel began to feel ill and disoriented.  She left Mr. Okrasinski=s apartment and made her way home
alone.  She had difficulty driving, was
disoriented, and later became physically sick. 
She decided she had probably been drugged.  A couple of days later, Ms. Nagel told
Appellant about the evening she spent alone with Johnny Okrasinski.  In particular, she related to him her fear
that Mr. Okrasinski might have drugged her.  As a result of this conversation, Appellant
later became convinced Ms. Nagel had been raped by Johnny Okrasinski.

According to
Appellant=s
testimony at trial, Krista Nagel actually told him she had been raped by Mr. Okrasinski.  However,
Ms. Nagel testified differently.  She
said she never actually told Appellant she had been raped.  Rather, she merely related the other details
of the evening.  In fact, she testified
she had explicitly indicated to Appellant that Mr. Okrasinski
had not raped her.  Nonetheless,
Appellant became increasingly concerned about Ms. Nagel=s
welfare as a result of their conversation.








During the Spring of 1999, Appellant took several steps to protect
Krista Nagel and punish Johnny Okrasinski.  First, he told his supervisor an employee had
come forward with a charge of sexual assault against Johnny Okrasinski.  As a result of this, the hotel contacted the
police about the allegations.  Appellant
refused to identify Ms. Nagel to the hotel or the police at the time.  However, Appellant contacted the local rape
crisis center to discuss the situation with a counselor.  He even contacted Ms. Nagel=s stepfather and told him of his
concerns.  After Appellant contacted her
family, Ms. Nagel denied she had been raped. 
She also complained to the hotel management about Appellant=s interference in her life.  As a result of these actions, the Hilton
asked Appellant to resign in May 1999.

In April 1999,
Tiffany Judkins told Appellant about another incident
involving Johnny Okrasinski.  According to Appellant, Ms. Judkins told him she had also been raped by Mr. Okrasinski.  However,
Ms. Judkins testified that she had not been raped,
but rather she had been Agroped@ and Aviolated.@ 
Her testimony confirmed she had told Appellant about the incident, but
she insisted she had told him she had not been raped.  Nonetheless, the conversation between Ms. Judkins and Appellant strengthened Appellant=s belief that Mr. Okrasinski
was a dangerous person.  He became
convinced Johnny Okrasinski was a rapist that needed
to be stopped.  He grew frustrated that
Ms. Nagel refused to tell the police and began telling others that he might
harm Johnny Okrasinski.

In June 1999,
Appellant began receiving professional mental health counseling through the
Centers for Children and Families.  He
later began receiving psychological counseling from MHMR as well.  He was also hospitalized in a psychiatric
hospital for a period of time and placed on medication for depression and
bipolar disorder.  Throughout this period
he remained upset about Mr. Okrasinski=s alleged assault on Krista Nagel.  Several different witnesses testified that he
had threatened to hurt Mr. Okrasinski.








Finally, in
January 2000, Appellant drove to Johnny Okrasinski=s place of employment and waited
outside by his car in the alley.  As Mr. Okrasinski exited the building into the alleyway, Appellant
began firing his gun.  Mr. Okrasinski took cover behind his van while a number of
witnesses from nearby businesses called the police.  After a few minutes, Appellant climbed on top
of the van and shot Mr. Okrasinski from above.  He then jumped to the pavement and shot him
two more times as he lay on the ground. 
Appellant then fled from the alley, passing several businesses before he
got back to his car and drove away.  The
police later tracked Appellant=s
parked car to a nearby lot based on witness descriptions.  Appellant eventually returned to his car and
was arrested.  The gun he had used was on
the seat of the car and a signed letter of confession was found on his person.

Appellant never
denied shooting Johnny Okrasinski.  He told the police Mr. Okrasinski
was a predator and a serial rapist and he shot him in order to stop him from
victimizing other women.  Prior to the
shooting, Appellant wrote and mailed letters to a number of friends and family
members explaining his intent to kill both Johnny Okrasinski
and himself.  Many of these letters were
placed into evidence.

Appellant now
raises five issues and numerous sub-issues for review by this Court.   Appellant=s
claims can be categorized under four general considerations:  (1) whether Appellant received ineffective
assistance of counsel at trial; (2) whether the trial court allowed improper
testimony during the punishment phase of the trial by a court appointed
psychiatrist about future dangerousness; (3) whether the trial court improperly
denied Appellant=s motion
for new trial based on the denial of choice of counsel and ineffective counsel;
(4) whether the prosecution made improper comments during opening statements
and closing argument.








With his first,
third, and fourth issues, Appellant argues he received ineffective assistance
of counsel at trial.  In particular, he
contends his counsel provided inadequate representation based on the following:  (1) failure to interview crucial witnesses
for use in the mitigation of punishment; (2) failure to object to improper
remarks made by the prosecutor; (3) failure to obtain information to use as
impeachment evidence against the State=s
witnesses; (4) failure to call additional witnesses who were available to
testify; (5) failure to interview a witness who could discredit the
psychiatrist=s
testimony; and (6) failure to object to the psychiatrist=s
testimony regarding future dangerousness.

Texas appellate
courts review claims of ineffective assistance of counsel according to the 

two-part
test articulated in Strickland v. Washington.[1]  Hernandez v. State,
988 S.W.2d 770, 770 (Tex.Crim.App. 1999).  First, a defendant must establish he received
deficient assistance from counsel.  Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App.
1999).  This requires a showing
that counsel=s
performance fell below an objective standard of reasonableness.  McFarland v. State, 928 S.W.2d 482,
500 (Tex.Crim.App. 1996), cert. denied, 519
U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851
(1997).  Second, a defendant must
affirmatively prove counsel=s
deficient performance prejudiced his defense. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). 
Such prejudice is shown when the defendant establishes there is a
reasonable probability that but for counsel=s
unprofessional errors, the result of the proceeding
would have been different.  Id.








The burden of
proving ineffective assistance by counsel is on the defendant, and must be
proved by a preponderance of the evidence. 
Jackson v. State, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). 
The reviewing court looks to the circumstances of each case and considers
the totality of the representation.  Butler v. State, 716 S.W.2d 48, 54 (Tex.Crim.App.
1986); Perrero v. State, 990 S.W.2d
896, 899 (Tex.App.--El Paso 1999, pet. ref=d).  A strong presumption exists that counsel=s conduct fell within the wide range of
reasonable professional assistance.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001); Calderon
v. State, 950 S.W.2d 121, 126 (Tex.App.--El Paso
1997, no pet.).  As such, the
appellate review is highly deferential to trial counsel and absent of the
harmful effects of hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App.
1984).  Moreover, all claims of
ineffective assistance must be firmly founded in and affirmatively demonstrated
by the record.  McFarland, 928 S.W.2d at 500; Perrero,
990 S.W.2d at 899.  If the record on
appeal is undeveloped and does not adequately reflect the failings of trial
counsel, then the ineffective assistance of counsel claim will fail.  See Thompson, 9
S.W.3d 808, 813-14.

In the case before
us, the Appellant attempted to establish an adequate record of counsel=s deficient assistance through a
hearing on a Motion For New Trial.  However, because the hearing on the Motion For New Trial was held more than seventy-five days after the
sentence was imposed in open court, any evidence adduced at that hearing cannot
be considered by this Court on appeal.  See
Tex.R.App.P. 21.8; Cobb v. Godfrey,
739 S.W.2d 47, 49 (Tex.Crim.App. 1987)(orig. proceeding). 
As a result, Appellant=s
claims related to ineffective assistance of counsel are not supported by the
record before us.  See Thompson, 9 S.W.3d at 813; Perrero,
990 S.W.2d at 899.  Because the record
before us fails to establish the reasons behind the trial counsels= actions, Appellant has failed to rebut
the strong presumption that the actions taken by his trial attorneys fell
within the wide range of reasonable professional assistance.  Thompson, 9 S.W.3d
at 814.   Appellant=s first and third issues on appeal are
overruled.  The portion of his fourth
issue relating to ineffective assistance of counsel is also overruled.








With his second
issue raised, Appellant argues the trial court erred in allowing the
psychiatrist, appointed by the court to evaluate his competency, to testify
about his future dangerousness as well. 
In his brief, Appellant asserts he was not informed of his Miranda[2]
rights prior to his interview with Dr. Ravi Medi.  He contends
Dr. Medi=s
testimony should have therefore been limited solely to competency and rebuttal
of an insanity defense.

During trial, the
court appointed psychiatrist, Dr. Medi, was called by
the State and questioned as to Appellant=s
competency.  After a lengthy
cross-examination by the State, the doctor was asked on redirect examination, AAnd you have
no medical reassurance that there won=t
be another victim laying out in that alley in five months if he doesn=t
go to prison, do you?@  Dr. Medi responded,
AI don=t.@ 
On re-cross examination, defense counsel had
the following exchange with Dr. Medi:

Counsel:           Based on your evaluation and
interview with Mr. Halley, can you say with any medical certainty that he will
commit a violent act again?

 

Dr.
Medi:         It=s possible.

 

Counsel:           Just as it=s
possible that he may, just as possible as he might, might not, rather?

 

Dr.
Medi:         Yes.

 

Counsel:           Fifty fifty?

 

Dr.
Medi:         I
cannot say 50/50, because he has, and I don=t
know about the future.

 








A criminal
defendant does not waive his constitutional rights merely by submitting to a
court appointed psychiatrist=s
competency examination.  Powell v.
State, 742 S.W.2d 353, 357-58 (Tex.Crim.App.
1987), vacated and remanded on other grounds, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 926 (1988).  Federal and State law requires defendants to
be given Miranda-type warnings prior to any such examination or
interview.  Estelle
v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68
L.Ed.2d 359 (1981); Wilkens v. State,
847 S.W.2d 547, 552-54 (Tex.Crim.App. 1992).  Failure to adequately warn a criminal defendant
of such rights may implicate both the Fifth and Sixth Amendments.  See Powell v. State,
492 U.S. 680, 685-86, 109 S.Ct. 3146, 3150, 106
L.Ed.2d 551 (1989).

In this instance,
nothing in the record establishes whether or not Appellant received any warnings
prior to being interviewed by Dr. Medi.  Further, defense counsel did not object to
Dr. Medi=s
testimony during trial.  See Tompkins
v. State, 774 S.W.2d 195, 214-15 (Tex.Crim.App. 1987). 
In Tompkins, the Court of Criminal Appeals found that a Smith error
is waived absent a specific objection based on Smith violation at
trial.  Id.  Like the appellant in Tompkins,
Appellant has failed to preserve this claim for review.  Tex.R.App.P. 33.1(a).  Appellant=s
second issue is overruled.  

With his fourth
issue, Appellant contends the trial court erred in not granting a new
trial.  In particular, he argues it was
the court=s duty to
grant a new trial based on the cumulative prejudice arising from the denial of
his choice of counsel and ineffective assistance by counsel.  Because we have already overruled all issues
related to ineffective assistance of counsel, we look now solely to Appellant=s claim that he was denied choice of
counsel as a basis for granting a new trial.

The record
reflects the court held numerous hearings prior to trial regarding Appellant=s dissatisfaction with counsel.  Three attorneys had been appointed and
dismissed prior to the court=s
appointment of John Roosa and Raymond Fivecoat.  Appellant
consistently had difficulties cooperating with counsel. 








A trial court has
no duty to search for counsel agreeable to the defendant.  Solis v. State, 792
S.W.2d 95, 100 (Tex.Crim.App. 1990).  Additionally, it is within the court=s discretion to determine whether
counsel should be allowed to withdraw from a case.  King v. State, 29
S.W.3d 556, 566 (Tex.Crim.App. 2000).  AHowever,
the right to counsel may not be manipulated so as to obstruct the judicial
process or interfere with the administration of justice.@  Id., quoting Green
v. State, 840 S.W.2d 394, 408 (Tex.Crim.App.
1992).  Personality conflicts
between a defendant and counsel are generally not valid grounds for
withdrawal.  Solis, 792 S.W.2d at 100.  

Here, the court
replaced counsel on three different occasions in response to Appellant=s concerns.  The trial court=s
refusal to remove Mr. Roosa and Mr. Fivecoat was within its sound discretion.  King, 29 S.W.3d at
566.  Moreover, we review the
trial court=s
decision to deny a motion for new trial under an abuse of discretion standard
as well.  Salazar v.
State, 38 S.W.3d 141, 148 (Tex.Crim.App. 2001).  Finding nothing indicating the court=s decision to deny the motion arbitrary
or unreasonable, we overrule Appellant=s
fourth issue.  See Lewis v. State,
911 S.W.2d 1, 9 (Tex.Crim.App.
1995).

Appellant=s fifth and last issue on appeal deals
with improper comments made by the prosecutor during opening statement and
closing argument.  Appellant
contends the State=s
comments amount to reversible error.  He
argues the prosecution improperly stated he went Abar
hopping@ after
killing Johnny Okrasinski and also referred to him as
a Apsycho.@








Arguments made
during summation must be limited to four general areas in order to be proper:
summation of the evidence; reasonable deductions from the evidence; answer to
argument of opposing counsel; and pleas for law enforcement.  Cannon v. State, 668 S.W.2d 401, 404 (Tex.Crim.App. 1984); Calderon, 950 S.W.2d at
133.  But, even if a prosecutor=s comments are deemed impermissible,
the error is not reversible unless, in light of the whole record, the argument
is extreme or manifestly improper, violative of a
mandatory statute, or injects new and harmful facts into the trial.  Todd v. State, 598
S.W.2d 286, 297 (Tex.Crim.App. 1980).  The comments must be so inflammatory and the
effect so prejudicial 
that a judicial instruction to disregard them would not cure the
error.  Blessing v.
State, 927 S.W.2d 266, 270 (Tex.Crim.App. 1996); Belton
v. State, 900 S.W.2d 886, 899 (Tex.App.--El Paso
1995, pet. ref=d).  In order to preserve error and the right to
complain about improper jury argument on appeal, an attorney must make a timely
objection and pursue the objection until they receive an adverse ruling on the
record.  See Cockrell v. State,
933 S.W.2d 73, 89 (Tex.Crim.App. 1996); Valencia
v. State, 946 S.W.2d 81, 82-3 (Tex.Crim.App.
1997).

Here, Appellant=s counsel failed to preserve error
through objection to the statements made by the State.  During opening statement, the prosecutor
mentioned to the jury that after Appellant shot and killed the victim, he went
back to his house, changed clothes, reloaded his gun, and went out Abar hopping or running around.@ 
Later, in closing argument, the prosecutor told the jury that Appellant
went Ato one of
the bars around Denny=s
and sat around there and drank and visited@
on the day he killed Johnny Okrasinski.  In both instances, Defense counsel failed to
object to the statements.  Likewise, in
closing argument, the State made the following comment:

You want to know why
Doctor Medi was right on target and you can take it
to the bank.  Because they didn=t
even bring you Doctor Huddleston that=s
still treating him to agree with Doctor Medi up
here on the stand what a psycho he is. 
Don=t you
think if they thought Huddleston could say one positive thing about an
alternative other than a maximum prison sentence, that they would have had
Huddleston sitting up there, that they would have had Doctor Carrick sitting up
there saying I read Doctor Medi=s report, but I disagree with him on
this phase or that phase?  [Emphasis
added].








Again, no objection whatsoever was
lodged by the defense.  Failure to object
to improper comments waives error on appeal. 
Cockrell, 933 S.W.2d at 89.  As such, Appellant=s
claim related to these comments has not been reserved for review.  His fifth issue on appeal is overruled.  

The judgment of
the trial court is affirmed.

 

 

July 18, 2002

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
466 U.S. 668, 687, 104 S.Ct. 2052,
2064, 80 L.Ed.2d 674 (1984).  





[2]
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).